CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

2016 JAN -6  AM 8: 40

DEPUTY CLERK

| | | |
|---|---|---|
| CARLA DASHA MATHEWS, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No.  4:14-CV-906-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Carla Dasha Mathews (Plaintiff) seeks judicial review of the decision by the Commissioner of Social Security (Commissioner) denying her application for a period of disability (POD) and disability insurance benefits (DIB) under Title II of the Social Security Act (Act). Both parties consented to proceed before a United States Magistrate Judge and the U.S. District Judge ordered the case be reassigned to this Court pursuant to 28 U.S.C. § 636(c). (Docs. 10, 12). After considering all the pleadings, briefs, and administrative record, this Court will affirm the decision of the Commissioner.

## I. STATEMENT OF THE CASE

Plaintiff originally filed for POD and DIB and April 25, 2011. Tr. 126. Her application was denied initially, and then upon reconsideration, so Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on January 23, 2013. Tr. 44. On August 15, 2013, the ALJ issued his decision, finding as follows:

1. Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 31, 2010. Tr. 23.

2. Plaintiff had the following severe combination of impairments: fibromyalgia, polyarthralgia, hypertension, hypothyroidism, morbid obesity, carpal tunnel syndrome, trigger finger, anxiety disorder not otherwise specified (NOS), attention-deficit/hyperactivity disorder, pain disorder, intermittent alcohol abuse, and major depressive disorder. Tr. 24.

3. Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24.

4. Plaintiff retained the residual functional capacity (RFC) "to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk (individually or in combination) throughout an eight-hour workday; and otherwise perform the full range of light work, except: she cannot climb ladders, ropes, or scaffolds and cannot crouch; she can frequently reach, handle, or finger; and she is limited to occupations with a reasoning development level of one or two (as defined in the Dictionary of Occupational Titles)." Tr. 27.

5. Plaintiff was unable to perform any of her past relevant work, but considering her age, education, work experience, and RFC, there existed jobs in significant numbers in the national economy that Plaintiff could perform. Tr. 37.

Accordingly, the ALJ found Plaintiff was not disabled under the Act and denied her claim. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review September 4, 2014. Tr. 1–4. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to her complaint and testimony at the administrative hearing, Plaintiff was fifty-

two years old at the time of the administrative hearing. She earned a GED and a food manager certificate, though at the time of the hearing, the food manager certificate had lapsed.[1] In the past Plaintiff worked as a certified food manager at a restaurant operated by her parents. Tr. 51. As food manager, Plaintiff had many responsibilities in the restaurant, from cleaning dishes, sweeping, and mopping, to cooking and preparing food and serving customers. Tr. 51. Additionally, Plaintiff worked as an activity director at a hospital, and as a medical assistant to a particular physician. Tr. 52–53.

Though Plaintiff alleges she suffers from a variety of impairments, she testified that the major reason she had to stop working as a medical assistant was her anxiety. Tr. 54. She claims her impairments render her disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler*

---

[1] Plaintiff testified that she earned the food manager certificate on the computer; it took her approximately three days.

*v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff raises one issue on appeal to this Court. She claims the ALJ failed to give proper

weight to the medical opinions in the record. Pl.'s Br. 4.

In considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (for example physicians who complete a single examination with the claimant), or non-examining sources (for example a physician who reviews only the claimant's paper record). *See generally* 20 C.F.R. §§ 404.1502, 416.902. Courts in this circuit "have long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Even "[t]he treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status." *Id.*

When the opinions of a physician, even a treating physician, are brief and conclusory, or not supported by medically acceptable clinical laboratory diagnostic techniques, or not otherwise supported by the evidence, the ALJ may give these opinions "less weight, little weight, or even no weight." *Greenspan*, 38 F.3d at 237. That is to say, an ALJ may give more weight to the opinions of a non-examining medical expert than the opinion of an examining medical expert. *See, e.g., id.* at 237, 238.

The regulations provide that unless the opinion of a treating source is given controlling weight—which the parties do not allege here—the Commissioner considers several factors in deciding what weight to give any medical opinion. 20 C.F.R. § 404.1527(c). These factors include: examining relationship (as mentioned above—whether the medical opinion is from a treating

source, non-treating source, or non-examining source); treating relationship (including length and frequency of treatment, as well as nature and extent of treatment); supportability; consistency; specialization; and other factors which support or contradict the opinion. *See id.* The ALJ must consider these factors because, as the Fifth Circuit Court of Appeals has stated, "[t]he ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000).

Plaintiff asserts the ALJ gave too little weight to the opinions of non-treating psychologists, Drs. Douglas Krug, Ph.D., and George Hill, Ph.D., and too much weight to the opinions of non-examining psychologists, Drs. Matthew Wong, Ph.D., and Charles Lankford, Ph.D.

On July 5, 2011, Dr. Krug completed a clinical interview and mental status examination over Plaintiff. Dr. Krug noted in regard to Plaintiff's memory and concentration that she could remember the last three Presidents and the Governor of Texas. Tr. 321. She could spell the word "world" backwards and "was able to generate serial 3's without difficulty. On the four-item memory task she was able to recall 2 of the 4 items after 10 minutes. When cued she was able to name 3 of 4 items." Tr. 321. Dr. Krug further noted: "[Plaintiff] appears to have average intellectual capability. Her vocabulary usage and general fund of information appear to be low average. She is able to grasp some of the complexity of concepts, but is relatively shut down emotionally." Tr. 321. Dr. Krug diagnosed anxiety disorder NOS, major depressive disorder, ADHD, and a pain disorder associated with both psychological factors and a general medical condition. Tr. 322. Dr. Krug gave Plaintiff a "fair" prognosis. Tr. 322. He stated: "She may benefit from psychotherapy; she does not appear to be interested in dealing with issues from her past that underlie the ongoing chronic anxiety and depression. Her coping mechanisms have become overwhelmed, and she is close to the edge daily in her ability to manage the flow of daily interactions." Tr. 322.

On December 2, 2011, Dr. Hill completed a second mental status evaluation over Plaintiff. Tr. 379–80. Dr. Hill diagnosed Plaintiff with "major depression, recurrent, moderate." Tr. 380. Dr. Hill noted that Plaintiff's primary care physician "should consider increasing" Plaintiff's Prozac prescription to combat Plaintiff's depression. Tr. 380.

As noted, Drs. Krug and Hill were just two of a litany of medical professionals who treated, examined, and reviewed the records of Plaintiff. On August 9, 2011, Dr. Wong examined the entire case record, including Dr. Krug's mental status report (although not including Dr. Hill's report). Dr. Wong not only offered diagnoses but gave his opinion as to how Plaintiff's impairments impacted her ability to work. Dr. Wong stated that Plaintiff was "somewhat limited by psychologically based [symptoms], but the impact of these [symptoms] does not wholly compromise the ability to function independently, appropriately, and effectively on a sustained basis. Alleged limitations are not wholly supported by [the evidence of record]." Tr. 336. Dr. Wong opined that Plaintiff was "able to understand, remember and carry out simple instructions, make simple decisions, concentrate for extended periods, interact with others, and respond to others." Tr. 340.

On December 6, 2011, Dr. Lankford performed an analysis of the entire case file, which included Dr. Hill's report. Tr. 370–71. Having all the medical records in front of him, Dr. Lankford decided the evidence most closely aligned with the opinions of Dr. Wong rather than Drs. Krug or Hill; therefore, Dr. Lankford affirmed the opinions of Dr. Wong. Tr. 370–71.

The ALJ made special note to place the medical opinions as to Plaintiff's anxiety and depression in the broader context of the whole record. Tr. 35. The ALJ noted:

> Throughout the majority of her treatment, [Plaintiff] reported no anxiety or depressive symptoms. The first evidence was in January 2010, and her primary care physician prescribed her Prozac. This apparently allayed her symptoms, because she made no further reports of symptoms through April 2011, when during an

examination there was no unusual anxiety or evidence of depression noted. It was not until the consultative examination in July 2011 that [Plaintiff] reported anxiety symptoms and attention limitations. However, [Plaintiff] was able to spell the word "world" backward and was able to generate serial threes without difficulty. She noted problems recalling items after 10 minutes, but when prompted she was able to name three of four items. However, only 17 days later, during treatment by her primary care physician, she made no complaints or reports of psychiatric symptoms, and there were none noted during the physical examination. At two visits in November 2011, [Plaintiff] denied any psychiatric symptoms, and the psychiatric portion of the physical examinations revealed no unusual anxiety or evidence of depression. If [Plaintiff's] symptoms were as severe as she reported during [Dr. Krug's] examination, I would expect at least some mention of psychiatric symptoms during the subsequent examinations.

Tr. 35. As noted, it is the province of the ALJ to determine the credibility of medical experts and weigh their opinions accordingly. *Greenspan*, 38 F.3d at 232. It is apparent this happened in the instant case. The ALJ undertook a very thorough analysis of the medical records in Plaintiff's history. In deciding to give the opinions of the State Agency reviewing physicians great weight, the ALJ considered the entire record and discerned relatively few instances where Plaintiff complained of anxiety or depression. Tr. 35. The whole of the record reflected that Plaintiff's "problems with attention and concentration were not a constant, consistent issue, but more of a situational problem." Tr. 35.

Taking the language of the regulatory factors, the ALJ noted the examining and treating relationship of various medical professionals. *See, e.g.*, Tr. 35 (noting what Plaintiff told her treating physician versus what she told an examining physician); see also 20 C.F.R. § 404.1527(c) (setting forth the factors). The ALJ considered the supportability and consistency of Plaintiff's subjective claims. *See, e.g.*, Tr. 35 ("[Plaintiff] testified that she cannot 'concentrate good or focus;' however, Dr. Hill opined the claimant's attention and concentration were in the normal range if there was no intense emotion present. This clearly indicates [Plaintiff's] problems with attention and concentration were not a constant, consistent issue, but more of a situational

problem.").

It appears, then, that the ALJ conducted thoughtful, in-depth discussion of the medical evidence and medical opinions of record. He applied the regulatory factors, as required by 20 C.F.R. § 404.1527(c), and he set forth the volumes of substantial evidence that support his conclusions. As the ALJ's determination is supported by substantial evidence, it must be upheld by this Court. *Greenspan*, 38 F.3d at 238; *see Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## V. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**.

**SO ORDERED.**

Dated January _6_, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**